## STATE v. LYDEN RICHARD BYSTROM.

156 N. W. (2d) 234.

February 2, 1968—No. 40,644.

*Kelly, Lee & Odell,* for appellant.

*Douglas M. Head,* Attorney General, *Carl F. Dever,* Village Attorney, and *Spencer G. Kluegel,* Assistant Village Attorney, for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the Municipal Court of Hennepin County. Defendant was convicted of driving while under the influence of alcohol. The evidence against him was the testimony from two officers that from his appearance, actions, and the smell of alcohol on his breath they thought that he was drunk. Defendant claims that he had only had three drinks through the evening involved and that if he appeared to be drunk, it was because he had suffered a small stroke and was suffering from diabetes.

Defendant testified that during the day before his arrest on the night of March 15, 1966, he had eaten little food but he had a great deal of sugar. He had consumed a cup of hot chocolate, some sweet rolls, and 8 to 10 cups of coffee, each cup containing two "bags" of sugar. That evening he arrived at the home of his son-in-law for dinner. They commenced eating at about 6 p. m. Defendant ate a big meal because he

had eaten little that day. During the meal and later that evening, defendant had another 6 or 8 cups of coffee. The record does not indicate whether this coffee contained sugar, but presumably it did. The three drinks mentioned by defendant consisted of 4 parts brandy and 1 part creme de menthe, also referred to as "stingers." Defendant's son-in-law testified that he had measured the amount they had drunk that night—it was about 10 ounces. Thus, defendant drank about 5 ounces of liquor in his three drinks. He had his first drink before dinner. The second drink was at approximately 8 p. m. The third drink was consumed between 10 and 10:30 p. m. The son-in-law testified that defendant when leaving did not seem to be affected by alcohol. He walked and talked normally.

Defendant testified that he drove home that evening on Highway No. 7. While driving he began to cough and felt a strange feeling in his head. From this time on, defendant can remember very little. The next thing he remembered was talking to the police officer. He also recalled that there was something wrong with his hand and arm. He remembers very little else of what happened when stopped by the policeman or while at the police station that night.

The police officer testified that when he first saw defendant's car, it was stopped partially off the road; that it backed onto the highway and drove off; that it weaved a substantial amount on the highway, and that after he stopped defendant he had trouble communicating with him because defendant seemed to have difficulty understanding anything. Defendant's eyes were described as watery; his speech, slurred; and his walk, very unsteady.

He was given a coordination test and was unable to pick up an object from the ground. The officer also testified that defendant had complained of some physical impairment to his right arm. The witness further testified that he detected the smell of alcohol on defendant's breath. Another officer testified that at the police station defendant was again given coordination tests and was unable to touch his finger to his nose. He also had trouble standing without swaying, and there was a slight slur in his speech. It was from these conditions and observations and a moderate smell of alcohol on his breath that both officers testified that it was their opinion that defendant was intoxicated.

The arresting officer stated that he had had no experience with people who had suffered a stroke. The officer at the police station testified that all but three of the people he had observed who had diabetic attacks were unconscious. He had been told in those instances that the persons suffered from diabetes. Of the people he has observed who had had strokes, all had been lying down and he had talked to none of them.

Defendant's family doctor testified that he treated defendant a day after his release from jail. In his examination he found high blood pressure, a paralysis of the wrist, and urinary findings suggestive of diabetes. His diagnosis at the time was diabetes mellitus, high blood pressure, and possibly a small stroke. Defendant was then hospitalized for a week to 10 days. There the diagnosis of diabetes was established, and defendant is presently being treated for diabetes. Previous to this, there was no indication of diabetes. The paralysis persisted during defendant's hospitalization.

The doctor testified that all of the symptoms that defendant had on the night of his arrest—assumed by the police to be symptoms of drunkenness—were symptoms that could be caused by a stroke. These include watery eyes, slurred speech, inability to keep his balance completely, the difficulty in touching his nose, and confusion. According to the witness, confusion could also be caused by being diabetic and having too much sugar.

The doctor further testified on cross-examination that it would be possible for some people to be under the influence of alcohol after consuming the amount defendant drank during the time interval testified to by defendant. He also said it was impossible to know if defendant did have a stroke on the night of the arrest. He further testified:

"Q. Do you have any opinion as to whether at that time and at that place he suffered from what I have been calling a diabetic shock? I believe you have been calling it an inability to handle the diabetes?

"A. I do not believe that the diabetes in itself would have caused that, no. I have an opinion to that extent."

Defendant relies on State v. Simonsen, 252 Minn. 315, 89 N. W. (2d) 910. In that case the defendant was accused of driving while under the influence of alcohol. The evidence of intoxication presented by the state

was, as in the present case, solely the testimony of those who had observed the defendant at the time of his arrest. They stated that from his appearance, inability to walk steadily, and his confused condition he seemed to be drunk. The defendant in that case claimed that at the time he was arrested he was suffering from insulin shock. There are significant differences between the present case and Simonsen. In Simonsen defendant's doctor knew about defendant's diabetic condition and testified concerning its development, so he was able to give as his expert opinion that the defendant was not under the influence of alcohol but was suffering from insulin shock. In the present case the doctor testified that he could not know for certain if defendant had had a stroke, and that his condition could not be explained by the diabetes alone. In Simonsen the defendant had a history of suffering from diabetes for about 5 years and had been receiving insulin for about 6 months from the doctor who testified in his behalf. In the present case defendant had no history of strokes or diabetes before the arrest.

Considering all of the evidence in the instant case, it appears to us that the trial judge was confronted with a fact issue. We cannot say that it was unreasonable for him to decide that defendant was driving while under the influence of alcohol the night of the arrest.

Affirmed.